STATE OF CONNECTICUT *v.* MELVIN DELGADO
(SC 15632)

Callahan, C. J., and Berdon, Katz, McDonald and Peters, Js.

Argued November 4, 1998—officially released February 9, 1999

*Theresa M. Dalton*, assistant public defender, for the appellant (defendant).

*Ellen Jawitz*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *John F. Fahey*, assistant state's attorney, for the appellee (state).

CALLAHAN, C. J. The defendant, Melvin Delgado, appeals from judgments of conviction, rendered after a jury trial, as an accessory to murder in violation of General Statutes §§ 53a-8 and 53a-54a;[1] and of possession of a firearm during the commission of a class A, B or C felony in violation of General Statutes § 53-202k.[2] On appeal,[3] the defendant claims that the trial court improperly: (1) determined that the evidence presented at trial was sufficient to support a conviction as an accessory to murder; (2) instructed the jury on the dual intent element of accessorial liability; (3) marshaled

[1] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

[3] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

the state's claims and evidence in its instructions; (4) deprived the defendant of his right to counsel under the sixth amendment to the United States constitution; and (5) rendered judgment convicting the defendant of a separate crime under § 53-202k. We affirm the trial court's judgment of conviction as an accessory to murder in violation of §§ 53a-8 and 53a-54a, and vacate the judgment of conviction of possession of a firearm during the commission of a class A, B or C felony in violation of § 53-202k.

The jury reasonably could have found the following facts. On the evening of December 20, 1994, the defendant, a member of the Los Solidos street gang, was socializing with friends at a party in an apartment in Hartford's Dutch Point housing project (Dutch Point). A fellow Los Solidos gang member, identified only by the nickname "Cheesecake," also was present at the party. Late in the evening, the defendant, who was carrying a nine millimeter pistol, left the party and went to meet Cheesecake at a nearby store located at 63 Norwich Street. Cheesecake was armed with a .38 caliber revolver.

Shortly after midnight, while he was walking from Dutch Point to the store, the defendant encountered the victim, Anthony Battle, near the intersection of Stonington and Norwich Streets. The defendant recognized the victim as a member of Twenty Love, a rival gang with which the Los Solidos gang was at war. The defendant approached the victim from the Stonington Street side of the intersection, and the two men engaged in a heated argument. The defendant, who at this time was approximately fifteen to twenty feet from the victim, drew his pistol and began firing at the victim. While the defendant was shooting at the victim, Cheesecake, who was standing at the Norwich Street side of the intersection, also opened fire on the victim. The defendant and Cheesecake continued to shoot at the victim as he attempted

to flee. After firing thirteen rounds, the defendant watched as the wounded victim climbed a fence and escaped into a nearby park. Thereafter, the defendant and Cheesecake left the scene separately.

Within minutes, two Hartford police officers arrived at the scene of the shooting and found the victim lying on the ground in intense pain. He had been shot twice, once in the back of the right leg and once in the back of the right arm. The victim told the officers that he had been shot by members of Los Solidos and that at least one of the shooters was Hispanic. The victim was transported to Hartford Hospital, where he subsequently died from loss of blood caused by his gunshot wounds.

I

With respect to the murder charge, the defendant's first claim is that the evidence presented at trial was not sufficient to support a determination that he possessed the dual intent required for accessorial liability under § 53a-8, namely, the intent to aid the principal and the intent to commit the underlying offense. We disagree.

In reviewing a sufficiency of the evidence claim, "we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994); see *State* v. *DeJesus*, 236 Conn. 189, 195, 672 A.2d 488 (1996). In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. *State* v. *Sivri*, supra, 132–33. The trier may "draw

whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) Id. "As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt; *State* v. *Ford*, 230 Conn. 686, 693, 646 A.2d 147 (1994); *State* v. *Patterson*, [229 Conn. 328, 332, 641 A.2d 123 (1994)]; *State* v. *Little*, 194 Conn. 665, 671–72, 485 A.2d 913 (1984); nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. *State* v. *Sivri*, supra, 134. On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. Id." (Internal quotation marks omitted.) *State* v. *DeJesus*, supra, 196.

Section 53a-8 (a), the statutory provision that governs accessorial liability, provides in relevant part that "[a] person, acting with the mental state required for commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct . . . as if he were the principal offender." We previously have stated that "a conviction under § 53a-8 requires proof of a dual intent, i.e., that the accessory have the intent to *aid* the principal *and* that in so aiding he intend to *commit* the offense with which he is charged." (Emphasis in original; internal quotation marks omitted.) *State* v. *Foster*, 202 Conn. 520, 525–26, 522 A.2d 277 (1987). In other words, in order for the defendant to be convicted of murder under an accessory theory of liability, the state was required to prove beyond a reasonable doubt that the defendant (1) intended to aid Cheesecake in killing the victim *and* (2)intended to kill

the victim. See *State* v. *Diaz*, 237 Conn. 518, 543, 679
A.2d 902 (1996); *State* v. *Foster*, supra, 525–26.

A

The defendant contends that the evidence was not
sufficient to support a finding that he intended to aid
Cheesecake in the commission of murder because, at
the time that the defendant was shooting at the victim,
he was unaware that someone else was shooting at the
victim as well.

"Whether a person who is present at the commission
of a crime aids or abets its commission depends on the
circumstances surrounding his presence there and his
conduct while there." *State* v. *Laffin*, 155 Conn. 531,
536, 235 A.2d 650 (1967). "Since under our law both
principals and accessories are treated as principals
. . . if the evidence, taken in the light most favorable to
sustaining the verdict, establishes that [the defendant]
committed the [murder] charged or did some act which
forms . . . a part thereof . . . then the convictions
must stand." (Internal quotation marks omitted.) *State*
v. *Diaz*, supra, 237 Conn. 543. "Therefore, as we have
stated in the past, the terms accessory and principal
refer to the alternate means by which one substantive
crime may be committed." (Internal quotation marks
omitted.) *State* v. *Roseboro*, 221 Conn. 430, 437 n.6, 604
A.2d 1286 (1992).

In a statement given to the police on the night of
his arrest, the defendant stated: "I heard another gun
buckin at the same time like over by the store (CBL
STORE 63 Norwich St.) and I heard like 5 or 6 shots.
I remember when *we* was buckin (shooting) at the black
boy he was like running across the street (Stonington
St.) towards the park (Colt's Park) and I think one of my
shots hit him cause like when I was buckin (shooting) he
fell over the fence but Miguel 'Cheese Cake' could have
hit him too *cause we was both buckin at the same time,*

but I think I got him!!'' (Emphasis added.) From the defendant's account of the shooting, the jury reasonably could have inferred that, at the time that the defendant was firing the thirteen rounds at the victim, he was aware that Cheesecake also was shooting at the victim. Although the evidence did not reveal whether it was the defendant or Cheesecake who had fired the shot that fatally injured the victim, the jury reasonably could have determined that there was sufficient concert of action between the defendant and Cheesecake to support the accessory allegation. *State* v. *Diaz*, supra, 237 Conn. 543. As such, there was sufficient evidence to support the jury's conclusion that the defendant had intentionally contributed to the victim's murder. See id.

## B

The defendant also maintains that the evidence was insufficient to support a finding that he satisfied the second prong of the dual intent requirement, namely, that he intended to kill the victim. We consistently have concluded that ''the specific intent to kill may be proven solely by circumstantial evidence, as long as that evidence establishes beyond a reasonable doubt that the defendant had the conscious objective to take the life of another. . . . The defendant's intent to kill, therefore, may be inferred from evidence of the defendant's use of a deadly weapon, the manner in which the weapon was used, and the nature and number of wounds inflicted. . . . Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one.'' (Citations omitted; internal quotation marks omitted.) *State* v. *Patterson*, supra, 229 Conn. 333; see also *State* v. *Medina*, 228 Conn. 281, 303–304, 636 A.2d 351 (1994); *State* v. *Rasmussen*, 225 Conn. 55, 74, 621 A.2d 728 (1993). ''Moreover, the [jury is] not bound to accept as true the defendant's claim of lack of intent or his

explanation of why he lacked intent." *State* v. *DeJesus*, supra, 236 Conn. 197.

The state presented evidence from which the jury reasonably could have found that the defendant: (1) knew that the victim was a member of a rival gang; (2) became involved in an angry verbal confrontation with the victim immediately before the shooting; (3) fired thirteen rounds at the victim; (4) was approximately fifteen to twenty feet from the victim when he opened fire; (5) continued to shoot as the victim attempted to flee; (6) thought that one of his shots might have hit the victim; and (7) did not attempt to aid or summon medical assistance for the victim. We conclude, therefore, that the evidence presented at trial was sufficient to support the jury's determination that the defendant intended to kill the victim. Consequently, the defendant's claims of evidentiary insufficiency are without merit.

## II

The defendant next claims that the trial court improperly instructed the jury in response to the jury's question regarding the requirements of accessorial liability. Specifically, the defendant asserts that the trial court improperly (1) characterized the dual intent element of accessorial liability, and (2) directed the jury to consider the actions and intent of Cheesecake when it assessed the defendant's liability. We disagree.

Although the defendant did not raise this claim in the trial court, he contends that the claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). In *Golding*, we concluded that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the

alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. We agree that the record is adequate for review and that the defendant raises a constitutional claim. See *State* v. *Austin*, 244 Conn. 226, 235, 710 A.2d 732 (1998) (" '[a]n improper instruction on an element of an offense . . . is of constitutional dimension' "). We, therefore, turn to the third prong of *Golding*, which is dispositive on this issue.

"Our analysis begins with a well established standard of review. When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Denby*, 235 Conn. 477, 484–85, 668 A.2d 682 (1995). "[I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Figueroa*, 235 Conn. 145, 170–71, 665 A.2d 63 (1995).

The defendant concedes that the trial court's original charge properly instructed the jury on the elements of accessorial liability.[4] Moreover, the defendant concedes

[4] With respect to the issue of accessorial liability, the trial court's original charge stated: "You may consider whether or not [the defendant] was an

that the trial court's first supplemental instruction on accessorial liability also was proper.[5] The defendant's challenge is limited to the trial court's second supplemental instruction on accessorial liability, which was given in response to the following question posed by the jury: "Is it sufficient that the defendant was an active participant in the events which caused the death of another? Or, do we need to find beyond a reasonable

accessory to murder. And the statute, as applied to this case and pertinent to this case, reads as follows: A person acting with a mental state required for the commission of an offense, who intentionally aids another person to engage in conduct which constitutes an offense, shall be criminally liable for such conduct. And I've already defined for you intent from the [murder] statute [§ 53a-54a]. And it is the same that applies to the intent of this statute. And again, intent can only be determined, if determined at all, from the circumstances surrounding the actor or doer's conduct.

"Now, it is not enough that the defendant committed acts which may in fact have aided the committing of the criminal act. One who is present when a crime is committed, but neither assists in its commission nor shares in its criminal intent, cannot be convicted as an accessory. Mere presence is not enough, nor passive acquiescence is not enough.

"To be an accessory, the defendant must have criminal intent in community of unlawful purpose with the one who did the criminal act or caused death.

"The question before you then is this: Did the defendant intend to aid the person who caused [the victim's] death? And in so doing, did he intend to have the crime of murder committed? If you find that the state has proved that the defendant intended to aid the person who caused the death, and in so doing, did intend to have the crime of murder committed, then you must find the defendant guilty of being an accessory to murder. On the other hand, if the state has failed to so prove, you must find the defendant not guilty of accessory to murder."

[5] During deliberations the jury posed the following question to the court: "We would like to clarify what accessory means as it relates to the charges and their element[s]."

The court responded: "A person acting with the mental state required for a commission of an offense, who intentionally aids another person to engage in conduct which constitutes an offense, shall be criminally liable for such conduct.

"To be an accessory, the defendant must have criminal intent and community of unlawful purpose with the one who did the criminal act. So, the question you would ask would be, as to murder: Did the defendant intend to aid the person who caused [the victim's] death? And in so doing, did he intend to have the crime of murder committed?"

doubt that the defendant fired the fatal shot?" In response to the jury's question, the trial court instructed: "Where it cannot be determined who fired the fatal shot, beyond a reasonable doubt, the element of murder as to who caused the death has not been proved beyond a reasonable doubt. However, persons acting with the mental state required for commission of murder, who intentionally aid one another to engage in . . . such conduct, and cause the death, are accessories to one another, and would be criminally liable for such conduct as accessories to murder." The defendant claims that this instruction did not delineate clearly the dual intent requirement of accessorial liability and directed the jury to consider the intent of the coaccused in determining the defendant's culpability.

Upon examining the entire jury charge, we conclude that the trial court properly instructed the jury regarding accessorial liability. Both in its original charge, and in its first supplemental charge, the trial court properly articulated the requisite standard of dual intent. Moreover, the trial court did not contradict those instructions in the supplemental charge challenged by the defendant. In fact, nothing in the challenged charge reasonably could have been interpreted as relieving the state of its burden of proving that the defendant himself intended both to aid Cheesecake and to kill the victim. Consequently, an examination of the court's instructions as a whole reveals that it is not reasonably possible that the jury was misled. Thus, we conclude that the defendant has not demonstrated either that an alleged constitutional violation clearly exists or that he was deprived of a fair trial. Therefore, he has failed to satisfy the third prong of *Golding*.

### III

The defendant next claims that the trial court's instructions unfairly marshaled the evidence by drawing the jury's attention to the state's case while obscuring the defendant's case. The defendant maintains that

the court's instructions thereby violated his federal and state constitutional rights to due process. Although this claim was not properly preserved at trial,[6] the defendant seeks to prevail on it under *State* v. *Golding*, supra, 213 Conn. 239–40.[7] We conclude that his claim also fails under the third prong of *Golding*.

A trial court has broad discretion to comment on the evidence adduced in a criminal trial. *State* v. *James*, 211 Conn. 555, 571, 560 A.2d 426 (1989). We previously have stated that "[a] trial court often has not only the right, but also the duty to comment on the evidence." *State* v. *Hernandez*, 218 Conn. 458, 461–62, 590 A.2d 112 (1991); see *State* v. *Lemoine*, 233 Conn. 502, 511–12, 659 A.2d 1194 (1995); *State* v. *Marra*, 222 Conn. 506, 538, 610 A.2d 1113 (1992); *State* v. *James*, supra, 571. "The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . and therefore, we have stated that a charge must go beyond a bare statement of accurate legal principles to the extent of indicating to the jury the application of those principles to the facts claimed to have been proven." (Citation omitted; internal quotation marks omitted.) *State* v. *Hernandez*, supra, 462; see *State* v. *Canty*, 223 Conn. 703, 716–17, 613 A.2d 1287 (1992); *State* v. *Shannon*, 212 Conn. 387, 408, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989); *State* v. *Mullings*, 166 Conn. 268, 274, 348 A.2d 645 (1974).

"The purpose of marshaling the evidence by the trial judge is to provide a fair summary of the evidence, and

---

[6] The defendant took exceptions to several portions of the trial court's charge. These exceptions, however, did not preserve the defendant's broad claim on appeal that the trial court unfairly marshaled the evidence in favor of the state. See *State* v. *Hernandez*, 218 Conn. 458, 461 n.2, 590 A.2d 112 (1991) ("defendant took an extensive exception to the court's 'marshalling the evidence' ").

[7] See part II of this opinion.

nothing more; to attain that purpose, the [trial] judge must show strict impartiality." *United States* v. *Levy*, 578 F.2d 896, 903 (2d Cir. 1978). To avoid the danger of improper influence on the jury, a recitation of the evidence "should not be so drawn as to direct the attention of the jury too prominently to the facts in the testimony on one side of the case, while sinking out of view, or passing lightly over, portions of the testimony on the other side, which deserve equal attention." (Internal quotation marks omitted.) *State* v. *Hernandez*, supra, 218 Conn. 462. In marshaling the evidence, the court must be careful not to imply any favor or criticism of either side. Id., 463. "Even where the defendant has presented no evidence, the [trial] court's summary of the evidence should try to give fair recognition to relevant points raised by the defense in cross-examination as well as to the general theory of the defense." (Internal quotation marks omitted.) Id., 462–63.

In support of his contention that the trial court marshaled the evidence unfairly, the defendant relies on *State* v. *Hernandez*, supra, 218 Conn. 458. In *Hernandez*, we reversed the defendant's conviction because the trial court had "extensively detailed the state's claims and its evidence in support thereof, and little or no reference was made to the defendant's exculpatory evidence and his theory of defense . . . ." Id., 465. A careful and thorough review of the record in the present case reveals that the court properly included, in its recitation, the defendant's exculpatory evidence and his theory of defense.

At trial, the defendant relied primarily on the testimony of friends and family members who were with him on the night of his arrest to support his contention that he was drunk and high that evening. He claimed that as a result of his intoxication, his statement to the police concerning the shooting was unreliable. With respect to the defendant's theory of defense, the trial

court stated in its charge: "The reference here is to the defendant's statement to the police . . . . You must first determine whether [the statement was] made. And if you credit that [it was] made, you must—you may use [it]—like any other witness—or, any other evidence produced during the course of the trial. Just as if the defendant was here testifying to it. In this connection, the—the defendant has produced James [Gunn], who testified that, on the night in question, he was with the defendant and two others. And over a course of about one hour, shared three blunts [marijuana cigarettes] and two forties [alcohol]. That they had started about 7 p.m. And when the defendant went into his house, he was high, staggering, with bloodshot eyes. Defendant's mother testified that she observed this conduct. She testified that he had been watching TV before the police arrived. And she asked the defendant, in Spanish, what was going on when the police came in. Milton Gonzalez testified that, that night, he was with the defendant, defendant's brother Alvin, and Noel Velez in the defendant's backyard for one to one and a half hours, during which time they were drinking beer and smoking blunts. And that the defendant was high and stumbling. Both Alvin Delgado and Noel Velez testified concerning the same event. This evidence was offered to show what effect the condition would have on giving a statement, knowingly, voluntarily, and intelligently."

Thus, in its charge the court explained in detail the defendant's theory that he was under the influence of drugs and alcohol at the time he gave his statement to the police and, therefore, that the statement was not credible. While doing so, the court explicitly referred to the testimony of the defendant's witnesses. Furthermore, the court also cautioned the jury *not* to place added weight on the testimony given by the police officers who had testified at trial solely because of their

status as police officers. In addition, the court specifically referred to testimony elicited by the defense that one of the officers who took the defendant's statement previously had forged prescriptions to obtain pain killers.

Moreover, an examination of the entire jury charge reveals three different instances in which the trial court instructed the jury that it should rely on its own recollection of the facts, rather than on the characterizations set forth by the court in the charge. The court also instructed the jury that it did not intend either to emphasize certain evidence above other evidence or to avoid mentioning certain evidence. We conclude, therefore, that it is not reasonably possible that the jury was misled by the trial court's marshaling of the evidence and, thus, the charge did not deprive him of his state or federal rights to due process. The defendant's claim, therefore, fails under the third prong of *Golding*.

## IV

The defendant next claims that he was deprived of his right to counsel at critical stages of the proceedings in violation of the sixth amendment to the United States constitution.[8] Specifically, the defendant maintains that the trial court unconstitutionally delivered a supplemental instruction to the jury and received the jury's verdict in the absence of the defendant's trial counsel. The defendant concedes that this claim was not properly raised at trial and seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40.[9] We conclude that this

[8] The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

[9] See part II of this opinion.

claim, too, fails under the third prong of the *Golding* test.

The record indicates that Kimberly Graham was the defendant's attorney and was present at all stages of the trial, with the exception of the third day of jury deliberations. On that day, Norma I. Sanchez-Figueroa appeared as defense counsel in place of Graham, at Graham's request.[10] During the course of their deliberations that day, the jurors submitted a note to the court asking whether it was sufficient that they find that the defendant was an active participant in the events that caused the defendant's death, or whether they needed to find beyond a reasonable doubt that the defendant himself had fired the fatal shot.[11] The court informed counsel of its proposed response to the jury's question. Sanchez-Figueroa did not object to the proposed response.

Later that day, the court received a note indicating that the jury had arrived at a verdict. Thereafter, Sanchez-Figueroa requested that the court wait for Graham who, according to Sanchez-Figueroa, was on her way to the courthouse. The trial court responded that Graham's absence already had caused the proceedings to be delayed for twenty minutes and that it did not want to inconvenience the jurors with a further delay. The court then allowed the jury to deliver its verdict. By the time that Graham arrived, the jury had been excused. There were no exceptions taken to the contents or delivery of the supplemental instruction or to the jury's return of a verdict in Graham's absence.

[10] Although it is not clear whether Sanchez-Figueroa had any previous involvement in the case, the record reveals that during jury voir dire, Graham specifically informed potential jurors that Sanchez-Figueroa and other attorneys from Graham's former law firm of Lyle, Hume & Ngobeni might appear at the counsel table with her during trial.

[11] See part II of this opinion.

"It is central to the constitutional principle that the accused shall enjoy the right to have the assistance of counsel for his defense and that 'he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial.' " *State* v. *Ralls*, 167 Conn. 408, 419, 356 A.2d 147 (1974). In *Ralls*, we concluded that a defendant who was represented by substitute counsel during the issuance of a supplemental instruction and the delivery of the jury's verdict had not been deprived of his sixth amendment right to counsel. Id., 420. We reasoned that the absence of the defendant's trial attorney had not implicated the sixth amendment because "[a]t no time during this period did any factual or adversary issues arrive; the only matters which faced the [substitute attorney] concerned questions of law. At all times during this stage of the proceeding, the defendant stood with counsel competent to represent and protect him." Id.

We find no meaningful distinction between the facts of the present case and those of *Ralls*. We conclude, therefore, that the activities conducted in the absence of the defendant's trial counsel did not violate his sixth amendment right to counsel. Consequently, the defendant's claim fails to satisfy the third prong of *Golding*.

V

Finally, the defendant claims that his separate conviction under § 53-202k was improper because that statute is a sentence enhancement provision, not a separate offense. Although the defendant concedes that the five year consecutive sentence imposed on him by the trial court pursuant to § 53-202k was proper, he maintains that his separate conviction under that statute should be vacated.[12] We agree.

---

[12] The state does not challenge this claim.

We previously have concluded in *State* v. *Dash*, 242 Conn. 143, 150, 698 A.2d 297 (1997), that § 53-202k is a sentence enhancement provision, not a separate crime. We conclude, therefore, that the defendant is entitled to have his conviction under § 53-202k vacated. Consequently, although the defendant's total effective sentence of sixty-five years was proper, the judgment must be modified to reflect the fact that § 53-202k does not constitute a separate offense.

The judgment is reversed in part and the case is remanded with direction to vacate the defendant's conviction under § 53-202k and to resentence the defendant to a total effective term of imprisonment of sixty-five years; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.