# STATE OF CONNECTICUT *v.* DION M. HENRY
## (SC 15945)

McDonald, C. J., and Katz, Palmer, Vertefeuille and Callahan, Js.

Argued January 19—officially released May 19, 2000*

---

* May 19, 2000, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Martin Zeldis*, assistant public defender, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James G. Clark*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, C. J. After a jury trial, the defendant, Dion M. Henry, was found guilty of murder in violation of General Statutes §§ 53a-8 and 53a-54a, attempted murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a, conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a, carrying a firearm without a permit in violation of General Statutes § 29-35, and criminal possession of a pistol by a previously convicted felon in violation of General Statutes § 53a-217.[1] The trial court rendered a judgment of

---

[1] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of

conviction, and the defendant appealed to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant's brother, Terry Portee, had an ongoing dispute with Harry Lamont Carter. On August 16, 1995, as a result of that dispute, Carter verbally confronted the defendant on a New Haven street and shot at the defendant as he tried to drive away. On August 17, 1995, Carter shot at the defendant and Portee as they were walking along a street in New Haven.

On the night of August 17, 1995, the defendant purchased a nine millimeter pistol on the street. The defendant had a criminal conviction for a class C felony and did not have a permit to carry a pistol. Some time later, at approximately 12:30 a.m. on August 18, 1995, the defendant picked up Portee in his car. Portee was carrying a .32 caliber pistol and the defendant was in possession of the nine millimeter pistol. The two then stopped to obtain some ammunition for the defendant's gun. Later, they picked up Michael Beverley and drove to 74 Orchard Street in New Haven to see Justin Brown,

conduct planned to culminate in his commission of the crime."

General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

General Statutes § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when he possesses a firearm . . . and (1) has been convicted of . . . a class C felony, except a conviction under section 53a-87, 53a-152 or 53a-153 . . . . For the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction."

a friend of Carter's. They planned to visit Brown in an effort to settle their dispute with Carter. During the drive, Portee stated that if they saw Carter, they would start shooting.

The defendant parked his car in front of 21 Orchard Street. The defendant and Portee then proceeded to Brown's apartment at 74 Orchard Street, where they rang the bell and received no answer. As they were leaving the building, they encountered Carter, Nicole Moore and Richard Massenburg walking down the driveway of 74 Orchard Street. Portee and the defendant began to shoot at them. Portee was the first to shoot, and the defendant began shooting immediately thereafter. After being shot several times, Carter took out a gun, fired one shot and started to flee. The defendant pursued Carter and continued to fire at him until his semiautomatic pistol jammed.

In the melee, Moore was fatally wounded by a bullet from Portee's gun. Carter also was shot several times, but survived the attack. When the police arrived at the scene, the defendant was found hiding under a truck at 66 Orchard Street. The nine millimeter pistol involved in the shooting also was found under the truck.

The jury found the defendant guilty of murder, attempted murder, conspiracy to commit murder, carrying a pistol without a permit, and criminal possession of a pistol by a previously convicted felon. This appeal followed.

On appeal, the defendant claims that the trial court: (1) improperly instructed the jury on the criminal liability of an accessory to murder; (2) improperly admitted an out-of-court statement made by a codefendant; (3) improperly denied the defendant's motion for judgment of acquittal as to the charge of conspiracy to commit murder; and (4) violated the defendant's constitutional right to due process of law by failing to put him to plea

on the charge of criminal possession of a pistol. We reject each of these claims and affirm the defendant's convictions.

I

The defendant first claims that the trial court improperly instructed the jury[2] that he could be found guilty as an accessory to murder even though Portee, the principal, had shot and killed an unintended victim. The defendant argues that the doctrine of transferred intent should not apply to accessory liability. The state counters that the murder statute, § 53a-54a (a), incorporates the doctrine of transferred intent and holds a principal liable for the death of the unintended victim. The state further argues that because principals and accessories to murder are treated alike under § 53a-8 (a), both a principal and an accessory are subject to the doctrine of transferred intent. We agree with the state.

The defendant did not request an instruction on the doctrine of transferred intent[3] or take an exception to

[2] The trial court's instructions on accessory liability included the following: "Bearing in mind these instructions regarding accessory liability, murder and intent, under the first count charging the defendant with murder as an accessory the state must prove the following beyond a reasonable doubt: one, that the principal offender, Terry Portee, that is the actual perpetrator, intended to cause the death of a person; and two, acting with such intent that the principal offender caused the death of Nicole Moore; and three, the defendant either solicited, requested, commanded, importuned or intentionally aided Terry Portee who actually shot and killed Nicole Moore; and four, the defendant did so with the specific intent to cause the death of a person." The defendant did not object or take exception to this charge.

[3] The defendant requested the following instruction on accessory liability: "The claim of accessory liability applies to the charge of murder and to all of the lesser included offenses, intentional manslaughter in the first degree, reckless indifference manslaughter in the first degree, and reckless manslaughter in the second degree. Accessory liability does not require that a defendant act with the conscious objective to cause the result described by statute. An accessory is liable if he acts intentionally, recklessly or with criminal negligence depending on the mental state required by the substantive crime and he intentionally aids another in the crime."

the court's instructions, and, therefore, he asks this court to review his unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. "The first two steps in the *Golding* analysis address the reviewability of the claim, while the last two steps involve the merits of the claim." *State* v. *Beltran*, 246 Conn. 268, 275, 717 A.2d 168 (1998). We review the defendant's claim because the record is adequate for review and the claim is constitutional in nature. See *State* v. *Hinton*, 227 Conn. 301, 308–309, 630 A.2d 593 (1993) (reviewing similar claim under *Golding*). The defendant's claim fails under *Golding*'s third prong, however, because we conclude that the trial court's instructions to the jury were proper.

The doctrine of transferred intent imposes the same criminal liability on a principal for murdering an unintended victim as if the principal had murdered his intended victim. General Statutes § 53a-54a (a) provides that a person may be guilty of murder when acting "with intent to cause the death of another person, he causes the death of such person or of *a third person* . . . ." (Emphasis added.) "[T]he intentional murder statute . . . specifically provide[s] for [the principal's] intent to be transferred from the target of [his] conduct to an unintended victim." *State* v. *Hinton*, supra, 227 Conn. 316.

Accessory liability is governed by § 53a-8 (a), which provides that "[a] person, acting with the mental state required for commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender." We have held that "a conviction under § 53a-8 requires proof of a dual intent, i.e., that the accessory have the intent to *aid* the principal *and* that in so aiding he intend to *commit* the offense with which he is charged. . . . *State* v. *Foster*, 202 Conn. 520, 525–26, 522 A.2d 277 (1987)." (Emphasis in original; internal quotation marks omitted.) *State* v. *Delgado*, 247 Conn. 616, 621, 725 A.2d 306 (1999).

We conclude that an accessory who intends to aid a principal in committing murder and who possesses the intent to murder a person is criminally liable for the killing of an unintended third party by the principal. In order for the defendant to be liable as an accessory to murder in this case, the state was required to prove that the defendant (1) intended to aid the principal in the killing of the intended victim and (2) intended that someone be killed. In *State* v. *Cots*, 126 Conn. 48, 58–59, 9 A.2d 138 (1939), a case decided before the adoption of the Penal Code in 1969, we discussed accessorial liability for murder. We looked to "the universally accepted rule" that "[a]ll who join in a common design to commit an unlawful act, the natural and probable consequence of the execution of which involves the contingency of taking human life, are responsible for a homicide committed by one of them while acting in pursuance of, or in furtherance of, the common design." (Internal quotation marks omitted.) Id., 59. We later discouraged using this principle in jury instructions for penal code accessory liability because, in isolation, it might lead a jury to believe it could convict the defendant as an accessory even though he himself did not

act with the requisite intent to kill. See *State* v. *Diaz*, 237 Conn. 518, 536, 679 A.2d 902 (1996). Since the jury instructions in *Diaz* were replete with reference to the burden of the state to prove the defendant's intent to kill, we found no cause to reverse the defendant's conviction.[4] Id., 537–41. More recently, in *State* v. *Foster*, supra, 202 Conn. 532, we explained: "Connecticut long ago adopted the rule that there is no practical significance in being labeled an accessory or a principal for the purpose of determining criminal responsibility. See *State* v. *Gargano*, 99 Conn. 103, 109, 121 A. 657 (1923); *State* v. *Hamlin*, 47 Conn. 95, 118 (1879); General Statutes (1875 Rev.) p. 545. The modern approach is to abandon completely the old common law terminology and simply provide that a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime." (Internal quotation marks omitted.)

"The established rule, as it is usually stated by courts and commentators, is that accomplice liability extends to acts of the principal . . . which were a 'natural and probable consequence' of the criminal scheme the accomplice encouraged or aided." 2 W. LaFave & A. Scott, Substantive Criminal Law, Limits of Accomplice Liability (1986) § 6.8 (b), p. 157. "[T]he aider and abettor is responsible not only for the success of the common design, but also for the probable and natural consequences that flow from its execution, even if those consequences were not originally intended." *United States* v. *Walker*, 99 F.3d 439, 443 (D.C. Cir. 1996). Because an accessory is liable for all the natural and probable consequences of a principal's actions and a principal is liable for the death of an unintended victim under § 53a-54a (a), an accessory who intentionally aids a principal in the murder of an intended victim with

---

[4] As set forth previously, the trial court made clear that such an intent to kill was required and did not use the common design language.

the intent to kill the intended victim is criminally liable for the resulting murder of an unintended victim under the doctrine of transferred intent. Thus, the trial court properly instructed the jury on the doctrine of transferred intent.

The defendant argues that *State* v. *Hinton*, supra, 227 Conn. 318, supports his claim that the doctrine of transferred intent does not apply here. We disagree.

In *Hinton*, the defendant was convicted of the attempted murder of an unintended victim. In the circumstances of *Hinton*, we declined to apply the doctrine of transferred intent and "conclude[d] that the transferred intent doctrine should not be applied to the crime of *attempted* murder." (Emphasis added.) Id. We reasoned that "[p]roof of an attempt to commit a specific offense requires proof that the actor intended to bring about the elements of the completed offense. *State* v. *Almeda*, 189 Conn. 303, 309, 455 A.2d 1326 (1983). If the completed offense includes an intent to kill a particular person, the attempt to kill must also include an intent to kill that same person." *State* v. *Hinton*, supra, 227 Conn. 316. We further reasoned in *Hinton* that the transferred intent doctrine is "not necessary" to prosecute a defendant for attempted murder because a defendant may be prosecuted for having an intent to kill and engaging in conduct aimed at killing the intended victim, without anyone actually having been killed. Id., 317.

We distinguish criminal liability for attempted murder from accessory liability because the attempt statute, § 53a-49, requires the intent to kill the *specific victim* of the attempt, whereas accessory liability does not. The murder statute, § 53a-54a, specifically provides for a transfer of the intent to kill, and we conclude that this transferred intent applies to accessory to murder liability. Furthermore, unlike attempted murder, liabil-

ity as an accessory to murder requires that a murder occur. If someone other than the intended victim is killed, the defendant would escape liability as an accessory were it not for the transferred intent doctrine. Thus, the defendant's claim that *Hinton* controls this case is unavailing.

Courts in other jurisdictions have extended the doctrine of transferred intent to accomplice liability for murder. In *United States* v. *Sampol*, 636 F.2d 621, 676–77 (D.C. Cir. 1980), two accomplices participated in a car bomb assassination where an unintended victim was killed. The United States Court of Appeals for the District of Columbia Circuit applied the doctrine of transferred intent to hold an "aider and abetter" liable for the murder of the unintended victim resulting from the principal's acts. Id., 676. In *People* v. *Lee*, 211 App. Div. 2d 570, 571, 621 N.Y.S.2d 603 (1995), the Appellate Division of the New York Supreme Court held, without discussion, that a defendant who participated with a principal in an attempted shooting of a intended victim, was criminally responsible for the resulting shooting death of an unintended victim. We note that our Penal Code is modeled after the New York Penal Code. See *State* v. *Desimone*, 241 Conn. 439, 456–57, 696 A.2d 1235 (1997); *State* v. *Havican*, 213 Conn. 593, 601, 569 A.2d 1089 (1990); *State* v. *Hill*, 201 Conn. 505, 516–17, 523 A.2d 1252 (1986).

Accordingly, we conclude that the trial court properly applied the doctrine of transferred intent to accessory liability for murder.

## II

The defendant next claims that the trial court improperly admitted a hearsay statement in violation of his right to confront the witnesses against him. U.S. Const., amend. VI. We disagree.

The following additional facts are necessary to resolve this issue. At trial, the state attempted to question Beverley about an out-of-court statement made just prior to the shooting. The defendant objected on the ground that the statement was inadmissible hearsay. The state made an offer of proof in which Beverley testified that both the defendant and Portee had said "[i]f they seen [him] it was on," referring to the intended victim, Carter. The state argued that the statement was admissible under the coconspirator's statement exception to the hearsay rule. The trial court overruled the defendant's objection, concluding that "[t]here is certainly enough evidence in this case independent of . . . Beverley's testimony to establish the existence of a conspiracy involving [the defendant] and Mr. Portee and perhaps others. The statement would certainly fit into the time frame made pursuant to the conspiracy than in the course of it as they were driving towards the area where the incident happened."

On direct examination by the state, Beverley testified that on the night of August 17, 1995, and into August 18, 1995, he was in the car with Portee and the defendant on their way to 74 Orchard Street. Beverley testified that he had heard both the defendant and Portee say "[i]f they seen [Carter] it was on." According to Beverley, "it was on" meant that "[t]hey'd start shooting." On cross-examination, Beverley later testified that he heard Portee make the statement and could not recall whether the defendant also had made the statement. The defendant made no motion to strike the testimony following the cross-examination.

We must first address whether the challenged statement was hearsay. " 'A statement made out-of-court that is offered to establish the truth of the matter contained in the statement is hearsay, and as such is inadmissible.' *State* v. *Blades*, 225 Conn. 609, 632, 626 A.2d 273 (1993)." *State* v. *King*, 249 Conn. 645, 670, 735 A.2d

267 (1999). However, "[a] statement made out of court is not hearsay unless it is offered to establish the truth of the facts contained in the statement." *State* v. *James*, 211 Conn. 555, 576, 560 A.2d 426 (1989).

Although we agree with the trial court that the statement was made while the conspiracy was ongoing and in furtherance of the conspiracy,[5] the challenged statement was not hearsay because it was admissible as circumstantial evidence of the conspiracy, not to establish its truth. The statement made by Portee to the defendant was evidence of the agreement to shoot Carter, in which both the defendant and Portee had played a part. We recently upheld the admissibility of a statement from one coconspirator to another that "was itself evidence of the conspiracy . . . ." *State* v. *Booth*, 250 Conn. 611, 636, 737 A.2d 404 (1999), cert. denied sub nom. *Connecticut* v. *Brown*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000). In this case, the statement had probative value without respect to its truth. The statement was admissible because it was made in the presence of and to the defendant while he and Portee went armed to the scene of the shootings. In *State* v. *Gannon*, 75 Conn. 206, 216, 52 A. 727 (1902), we upheld the admissibility of out-of-court statements made by others in accomplishing the purpose of a conspiracy as evidence "tending to prove an agreement to accomplish that purpose by such means." In *In re Jose M.*, 30 Conn. App. 381, 388, 620 A.2d 804, cert. denied, 225 Conn. 921, 625 A.2d 821 (1993), the Appellate Court correctly observed that *Gannon* allowed admission of the statements as "evidence of an agreement to accomplish the common purpose . . . ." See *State* v. *Gannon*, supra,

[5] "[I]t is well established that a coconspirator's [hearsay] statement, made while the conspiracy is ongoing and in furtherance of the conspiracy, is an exception to the hearsay rule and as such, does not violate the confrontation clause." (Internal quotation marks omitted.) *State* v. *Booth*, 250 Conn. 611, 634, 737 A.2d 404 (1999), cert. denied sub nom. *Connecticut* v. *Brown*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000).

216. Accordingly, we conclude that the statement was properly admissible.[6]

## III

The defendant next claims that the trial court improperly denied his motions for judgment of acquittal as to the conspiracy to murder charge. At the close of the state's case, the defendant moved for a judgment of acquittal based on insufficient evidence. The trial court denied the motion. After his conviction, the defendant renewed his motion for a judgment of acquittal, and the trial court again denied the motion. We are persuaded that the evidence was legally sufficient to support the jury's verdict and, therefore, we reject the defendant's claim.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Delgado*, [supra, 247 Conn. 620]." (Internal quotation marks omitted.) *State* v. *DeCaro*, 252 Conn. 229, 239, 745 A.2d 800 (2000).

The penal statute governing conspiracy liability, § 53a-48 (a), provides that "[a] person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more per-

---

[6] We uphold the admission of this statement on a basis other than that relied upon by the trial court. We have held previously that "this court is free to sustain a ruling on a different basis from that relied upon by the trial court. See *State* v. *Vincent*, 194 Conn. 198, 204 n.8, 479 A.2d 237 (1984); *Favorite* v. *Miller*, 176 Conn. 310, 317, 407 A.2d 974 (1978); W. Maltbie, Connecticut Appellate Procedure (2d Ed. 1957) § 36." *State* v. *John*, 210 Conn. 652, 679–80, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989).

sons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." We have held that "[t]o establish the crime of conspiracy under § 53a-48 . . . it must be shown that an agreement was made between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. The state must also show intent on the part of the accused that conduct constituting a crime be performed. . . . Further, the prosecution must show both that the conspirators intended to agree and that they intended to commit the elements of the underlying offense. . . . *State* v. *Lewis*, 220 Conn. 602, 606–607, 600 A.2d 1330 (1991)." (Internal quotation marks omitted.) *State* v. *Booth*, supra, 250 Conn. 657–58.

"Intent is generally proven by circumstantial evidence 'because direct evidence of the accused's state of mind is rarely available.' *State* v. *Greenfield*, [228 Conn. 62, 77, 634 A.2d 879 (1993)]. . . . [I]ntent is often inferred from conduct; id., 76; and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. *State* v. *Raguseo*, [225 Conn. 114, 119, 622 A.2d 519 (1993)]." *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994). We have determined that "[i]ntent to cause death may be inferred from the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death. . . . *State* v. *Raguseo*, supra, 120." (Internal quotation marks omitted.) *State* v. *Sivri*, supra, 127.

We conclude that there was sufficient evidence for the jury to find that the defendant had agreed with Portee to commit the murder of Carter, that he did so with the intent that Carter be killed and that he carried out that agreement. The jury reasonably could have inferred from the evidence that the defendant and

Portee had an agreement to shoot Carter and that the defendant intended the joint conduct that led to the killing of Moore and the wounding of Carter. Portee, the defendant's brother, had a violent dispute with Carter that involved the defendant. In the course of that dispute, Carter had shot at the defendant twice in the days before the murder. On the night of the shooting that resulted in his conviction, the defendant had purchased a pistol and, with Portee, had obtained ammunition. While the defendant and Portee, who was also armed, drove to 74 Orchard Street, the statement was made, "[i]f they seen [Carter] it was on." The defendant and Portee were armed with loaded handguns when they arrived at 74 Orchard Street, the apartment of a friend of Carter's. Almost immediately upon encountering Carter, Portee began shooting. The defendant began shooting shortly thereafter. The defendant pursued Carter and continued to fire at him until the defendant's pistol jammed. In the midst of the gun battle, in which Carter returned fire, Moore was killed by Portee. Carter was shot several times. From this evidence, the jury reasonably could have found that the defendant and Portee had agreed to kill Carter and that the defendant was aiding Portee in accomplishing that result by participating in a joint armed assault on Carter.

## IV

The defendant's final claim is that the trial court failed to put him to a plea on the charge of criminal possession of a pistol in violation of § 53a-217, infringing on his right to notice and to due process of law.[7] We find no merit to this unpreserved claim.

The following facts are relevant to our resolution of this claim. On August 21, 1995, the defendant was arrested and first presented in court. On November 7, 1995, the defendant pleaded not guilty to the five counts

[7] The defendant does not specify whether this claim is raised under the federal or the state constitution.

enumerated in the original long form information,[8] which included as count four a charge of criminal possession of a pistol in violation of § 53a-217, on which he also elected a jury trial. On February 20, 1998, the state filed a substitute long form information.[9] In that information, the only change as to the criminal possession of a pistol charge was that it was renumbered as count five. The clerk put the defendant to plea on the first four counts. The defendant pleaded not guilty and elected to be tried by a jury for each of the four charges.

During jury selection, the trial court informed each panel of the charges, including the fifth count. The defendant did not object to the trial court's including the fifth count. On February 27, 1998, the state indicated that it would be presenting additional witnesses and documents in support of the charge of criminal possession of a pistol. At that time, the defendant took no action to correct the trial court's earlier failure to put him to plea on that charge on February 20, 1998. On March 3, 1998, the first day of trial, the state filed a substitute information dated February 27, 1998, which corrected the time of the alleged offenses but did not make any other changes. The trial court read all five

---

[8] On November 7, 1995, the defendant was charged with the following: count one, murder in violation of §§ 53a-54a and 53a-8; count two, attempt to commit assault in the first degree in violation of §§ 53a-49 (a) (2) and 53a-59 (a) (1); count three, use of a firearm in the commission of a felony in violation of General Statutes § 53-202k; *count four, criminal possession of a pistol in violation of § 53a-217*; and count five, carrying a pistol without a permit in violation of § 29-35.

[9] On February 20, 1998, the state filed a substitute information form dated February 19, 1998, which charged the defendant with the following: count one, murder in violation of §§ 53a-54a and 53a-8; count two, attempt to commit murder in violation of §§ 53a-49 (a) (2) and 53a-54a; count three, conspiracy to commit murder in violation of §§ 53a-48 and 53a-54a; count four, carrying a pistol without a permit in violation of § 29-35; and *count five, criminal possession of a pistol in violation of § 53a-217.* In addition, the state filed a part B information, which charged the defendant with the use of a firearm in the commission of a felony in violation of General Statutes § 53-202k.

counts to the jury, including the count charging criminal possession of a pistol, and informed the jury that the defendant had entered not guilty pleas. Again, the defendant took no action as to the fifth count being read to the jury.

On March 4, 1998, the state entered a written stipulation that the defendant had been "convicted on a C felony," which is an element of the charge of criminal possession of a pistol, and the defendant, with the advice of counsel, agreed to that stipulation. Thereafter, the trial court instructed the jury on the charge of criminal possession of a pistol and referred to the prior written stipulation. The defendant did not take an exception to this instruction to the jury. The jury thereafter found the defendant guilty of criminal possession of a pistol as well as the other crimes with which he was charged.

On appeal, the defendant acknowledges that he did not properly preserve this claim and asks this court for review under *State* v. *Golding*, supra, 213 Conn. 239–40. We conclude that the clerk's failure to put the defendant to plea again when the state filed a substitute long form information was not an error of constitutional magnitude. We have held previously that when a defendant has been put to plea on a charge, the failure to put the defendant to plea again on an amended information when the nature of the offense is not changed is not a constitutional error. See *State* v. *Wallace*, 181 Conn. 237, 243, 435 A.2d 20 (1980); *State* v. *Jones*, 166 Conn. 620, 629, 353 A.2d 764 (1974); *State* v. *Lorusso*, 151 Conn. 189, 191–92, 195 A.2d 429 (1963). Moreover, in light of the defendant's actual notice of the charge, he has not demonstrated that he was harmed in any way by the inadvertent failure to put him to plea on that charge.

The judgment is affirmed.

In this opinion the other justices concurred.