## In re Luis R.*
### (13009)

Peters, C. J., Shea, Santaniello, Hull and Higgins, Js.

Argued March 4—decision released August 4, 1987

*Francis J. Carino,* chief state's advocate, for the appellant (petitioner).

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Supreme Court.

Reporter of Judicial Decisions

*John T. Short, Jr.,* special public defender, with whom was *Christopher Sheehan,* for the appellee (respondent).

SANTANIELLO, J. This is an appeal by the state from an order of the trial court barring the respondent, who was adjudicated a delinquent for aiding another in committing a serious juvenile offense, from himself being charged as a serious juvenile offender.

The factual and procedural posture of this case is as follows: On November 25, 1985, a fifteen year old boy was robbed at knifepoint of a radio that he was carrying. The respondent, a minor, admitted in court that he had intentionally aided another person in the commission of the robbery. On April 25, 1986, the respondent was adjudicated a delinquent child for being an accessory to a robbery in the second degree in violation of General Statutes §§ 53a-135 and 53a-8. The respondent filed a motion on May 19, 1986, seeking an order of the court barring his adjudication as a "serious juvenile offender" as defined in General Statutes § 46b-120.[1]

---

[1] "[General Statutes] Sec. 46b-120. (Formerly Sec. 51-301). DEFINITIONS. The terms used in this chapter shall, in its interpretation and in the interpretation of other statutes, be defined as follows: 'Child' means any person under sixteen years of age; 'youth' means any person sixteen to eighteen years of age; 'abused' means that a child or youth (a) has had physical injury or injuries inflicted upon him other than by accidental means, or (b) has injuries which are at variance with the history given of them, or (c) is in a condition which is the result of maltreatment such as, but not limited to, malnutrition, sexual molestation, deprivation of necessities, emotional maltreatment or cruel punishment; a child may be found 'defective' who, by reason of a deficiency or defect of intelligence, which has existed from birth or from early age, requires, or will require, for his protection or for the protection of others, special care, supervision and control; a child may be found 'delinquent' (1) who has violated any federal or state law or municipal or local ordinance, other than an ordinance regulating behavior of a child in a family with service needs as defined in this section or (2) who has violated any order of the superior court; a child or youth may be found 'dependent' whose home is a suitable one for him, save for the financial inability of his parents, parent, guardian or other person maintaining such home to provide the specialized care his condition requires; a 'family with

On July 1, 1986, the court granted the motion and the respondent was sentenced and committed to the department of children and youth services (DCYS) for placement at the Long Lane School as a delinquent child for a maximum period not to exceed two years. This appeal was filed by the state in the Appellate Court on July 18, 1986, and on August 12, 1986, this court transferred the appeal to itself.

Initially, both parties to this action concede that there are distinct and substantial differences between being adjudicated a "delinquent" as compared to being adjudicated a "serious juvenile offender." The consequences

service needs' means a family which includes a child who (A) has without just cause run away from his parental home or other properly authorized and lawful place of abode; (B) is beyond the control of his parent, parents, guardian or other custodian; (C) has engaged in indecent or immoral conduct; or (D) has been habitually truant or who, while in school, has been continuously and overtly defiant of school rules and regulations; a child or youth may be found 'neglected' who (i) has been abandoned or (ii) is being denied proper care and attention, physically, educationally, emotionally or morally or (iii) is being permitted to live under conditions, circumstances or associations injurious to his well-being, or (iv) has been abused; a child or youth may be found 'uncared for' who is homeless or whose home cannot provide the specialized care which his physical, emotional or mental condition requires. For the purposes of this section the treatment of any child by an accredited Christian Science practitioner in lieu of treatment by a licensed practitioner of the healing arts, shall not of itself constitute neglect or maltreatment. 'Serious juvenile offense' means the violation by a child, including attempt or conspiracy to violate sections 53-80a, 53-390 to 53-392, inclusive, 53a-54a to 53a-57, inclusive, 53a-59 to 53a-60c, inclusive, 53a-70 to 53a-71, inclusive, 53a-72b, 53a-86, 53a-92 to 53a-94, inclusive, 53a-95, 53a-101, 53a-111 to 53a-113, inclusive, subdivision (1) of subsection (a) of section 53a-122, subdivision (3) of subsection (a) of section 53a-123, 53a-134, 53a-135, 53a-166, 53a-167c, subsection (a) of section 53a-174, 53a-196a, 53a-211, or for having without just cause run away from any secure placement other than home while committed as a delinquent child to the commissioner of children and youth services for a serious juvenile offense. 'Serious juvenile offender' means any child adjudicated a delinquent child for commission of a serious juvenile offense."

of the more serious designation are delineated in General Statutes §§ 46b-141,[2] 46b-140,[3] 46b-126,[4] and

[2] "[General Statutes] Sec. 46b-141. (Formerly Sec. 51-322). COMMITMENTS TO BE INDETERMINATE. EXTENSION. (a) Except as otherwise limited by subsection (e) of section 46b-140, commitment of children adjudged delinquent by the superior court to the department of children and youth services shall be for an indeterminate time up to a maximum of two years, or, when so adjudged on a serious juvenile offense, up to a maximum of four years at the discretion of the court, unless extended as hereinafter provided.

"(b) The commissioner of children and youth services may petition the court for an extension of the commitment beyond such two-year period on the grounds that such extension is for the best interest of the child and the court shall give notice to the parent or guardian and to the child at least fourteen days prior to the hearing upon such petition. The court may, after hearing and upon finding that such extension is in the best interest of the child, continue the commitment for an additional period of not more than two years. . . ."

[3] General Statutes § 46b-140 (e) (1) provides: "If the delinquent act for which the child is committed to the department of children and youth services is a serious juvenile offense, the court may set a period of time up to six months during which the department of children and youth services shall place such child out of his town of residence at the commencement of such child's commitment."

[4] "[General Statutes (Rev. to 1985)] Sec. 46b-126. (Formerly Sec. 51-307). CHILD CHARGED WITH A CLASS A FELONY OR SERIOUS JUVENILE OFFENSE TRANSFERRED TO REGULAR CRIMINAL DOCKET, WHEN. (a) The court shall hold a transfer hearing to determine whether it is appropriate to transfer and may transfer from the docket for juvenile matters to the regular criminal docket of the superior court any child referred for the commission of a class A felony, or for any serious juvenile offense designated as a class B or C felony if such child has previously been adjudicated a delinquent for a serious juvenile offense, as defined in section 46b-120, provided such child has attained the age of fourteen at the time the alleged delinquent act was committed. If the child is or has been under the custody of the commissioner of children and youth services, the commissioner shall provide any relevant information concerning the amenability of the child to treatment for use at the transfer hearing. No such transfer shall be valid unless, prior thereto, the court has made written findings after a hearing, that there is probable cause to believe that (1) the child has committed the act for which he is charged; (2) the child is not amenable to treatment in any institution or state agency or other available facility designed for the care and treatment of children to which said court may effect placement of such child which is suitable for his care or treatment; and (3) the prior adjudications of the child, together with the serious and dangerous nature of the acts and the physical, mental and emotional history and condition of the child,

46b-140 (e) (2).[5] Therefore, in view of the substantial differences of the potential penalties, the state is pursuing this appeal.

The state in its appeal, claims that the defendant should have been charged and prosecuted as a "serious juvenile offender" because the respondent had intentionally aided another who had committed a "serious juvenile offense," as defined in General Statutes § 46b-120. It claims that under the mandate of General Statutes § 53a-8,[6] the respondent should be "criminally liable for such conduct" and should be prosecuted and punished "as if he were the principal offender."

The respondent, to the contrary, contends that since General Statutes § 46b-120 specifies the offenses that constitute "serious juvenile offenses" without mentioning "aiding and abetting" as defined by § 53a-8, the respondent cannot be charged as a "serious juvenile

are such that the child is a danger to society and requires more secure and longer term handling than the juvenile justice system is able to provide and the institutions to which said court may sentence a defendant sixteen years of age or over are more suitable for the care and treatment of such child. Upon the effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age. If the action is dismissed or nolled or if such child is found innocent of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen."

[5] General Statutes § 46b-140 (e) (2) provides: "If the delinquent act for which the child is committed to the department of children and youth services is a serious juvenile offense and if the child has been subject to a mandatory transfer hearing but jurisdiction was retained by the superior court, juvenile matters, the court shall impose a period of one year during which the department of children and youth services shall place such child out of his town of residence at the commencement of such child's commitment."

[6] "[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

offender." He further claims that since statutes defining juvenile delinquency, such as § 46b-120, set standards governing the deprivation of a child's liberty, they are penal in nature and thus are to be strictly construed. *State* v. *Cook,* 183 Conn. 520, 522, 441 A.2d 41 (1981); *State* v. *Tedesco,* 175 Conn. 279, 291, 397 A.2d 1352 (1978).

Although the state concedes that § 46b-120 is penal in nature, and, as such, must be strictly construed, it argues that the entire scheme of the statutes must be considered as a whole, and that one who aids another in the commission of a "serious juvenile offense" may be adjudicated a "serious juvenile offender." Strict construction does not mean that a statute must be read in isolation. " 'In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result.' " *State* v. *Roque,* 190 Conn. 143, 151, 460 A.2d 26 (1983), citing *Stoni* v. *Wasicki,* 179 Conn. 372, 376–77, 426 A.2d 774 (1979). " 'The rule of strict construction does not require that the narrowest technical meaning be given to the words employed in a criminal statute in disregard of their context and in frustration of the obvious legislative intent.' " *State* v. *Faro,* 118 Conn. 267, 274, 171 A. 660 (1934), quoting *United States* v. *Corbett,* 215 U.S. 233, 242, 30 S. Ct. 81, 54 L. Ed. 173 (1909); *State* v. *Ellis,* 197 Conn. 436, 445, 497 A.2d 974 (1985); cf. *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 489, 400 A.2d 726 (1978); *Evening Sentinel* v. *National Organization for Women,* 168 Conn. 26, 31, 357 A.2d 498 (1975).

The state claims that the respondent should be charged as a serious juvenile offender because he was an accessory to robbery. Being an accessory is not a crime in and of itself, but is only another way of committing a crime. General Statutes § 53a-8 provides in relevant part that "[a] person, acting with the mental state

required for the commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct . . . as if he were the principal offender." Here, the respondent admitted in court that he had intentionally aided another person in the commission of the crime of robbery in the second degree. That crime is listed as one of the "serious juvenile offense[s]" that may, under § 46b-120, result in classification of a juvenile as a "serious juvenile offender." Despite the omission of accessory status under § 53a-8 in the litany of crimes listed in § 46b-120, a list that specifically includes reference to "attempt" under General Statutes § 53a-49 and "conspiracy" under General Statutes § 53a-48, the state maintains that our penal code, read as a whole, does not exclude an accessory from being charged as a "serious juvenile offender." We find the respondent's argument that he cannot be adjudicated as a "serious juvenile offender" because § 46b-120 sets forth attempt and conspiracy as "serious juvenile offense[s]" while it fails to set forth accessorial liability as such an offense to be without merit.

We have recently addressed the differences between the crimes of attempt and conspiracy, and accessorial liability. *State* v. *Foster*, 202 Conn. 520, 522 A.2d 277 (1987). In *State* v. *Foster*, supra, 527–28, we stated that "[a]ttempt and conspiratorial liability differ substantially from the liablity imposed on an accessory. . . . [B]oth attempt and conspiracy are offenses in and of themselves, while accessorial liability is not.[7] Attempt is a distinct, inchoate offense and a defendant may be punished for attempting to commit a substantive

---

[7] General Statutes § 53a-49 (attempt) and § 53a-48 (conspiracy) are both listed under chapter 952 of the General Statutes entitled "Penal Code; *Offenses,*" (emphasis added) as "Inchoate Offenses"; whereas General Statutes § 53a-8 (accessory) is found under chapter 951 entitled "Penal Code: Statutory Construction; Principles of Criminal Liability."

offense without actually committing the crime. General Statutes §§ 53a-49, 53a-51; see *State* v. *Trent,* 182 Conn. 595, 600, 438 A.2d 796 (1981). Likewise, conspiracy has been recognized as being a crime distinct from the commission of the substantive offense. See General Statutes § 53a-48. 'We have repeatedly held that conspiracy is a common-law crime and punishable as such under the statutes relating to the punishment of high crimes and misdemeanors. The commission of the substantive offense and a conspiracy to commit it are separate and distinct crimes. . . . The crime of conspiracy is dependent on clear principles, and has characteristics and ingredients which separate it from all other crimes.' *State* v. *Johnson,* 162 Conn. 215, 218–19, 292 A.2d 903 (1972); see *State* v. *Crump,* [201 Conn. 489, 497, 518 A.2d 378 (1986)]; *State* v. *Baker,* 195 Conn. 598, 608, 489 A.2d 1041 (1985).

"There is, however, no such crime as 'being an accessory.' *State* v. *Edwards,* 201 Conn. 125, 130, 513 A.2d 669 (1986); *State* v. *Harris,* 198 Conn. 158, 163, 502 A.2d 880 (1985); *State* v. *Baker,* supra. The defendant is charged with committing one substantive offense; '[t]he accessory statute merely provides alternate means by which a substantive crime may be committed.' *State* v. *Baker,* supra; *State* v. *Edwards,* supra, 131."

"Moreover, because accessorial liability is not a distinct crime, but only an alternative means by which a substantive crime may be committed, it would be illogical to impose liability on the perpetrator of the crime, while precluding liability for an accessory, even though both possess the mental state required for the commission of the crime. Connecticut 'long ago adopted the rule that there is no practical significance in being labeled an "accessory" or a "principal" for the purpose of determining criminal responsibility. See *State* v. *Gargano,* 99 Conn. 103, 109, 121 A. 657 (1923); *State*

v. *Hamlin,* 47 Conn. 95, 118 (1879); General Statutes (1875 Rev.) p. 545. The modern approach "is to abandon completely the old common law terminology and simply provide that a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime. Such is the view taken in the Model Penal Code, which provides that a person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of the offense, he solicits the other person to commit it, or aids or agrees or attempts to aid the other person in planning or committing it, or (having a legal duty to prevent the crime) failed to make the proper effort to prevent it." LaFave & Scott, Criminal Law (1972) § 63, p. 501; see also Model Penal Code (1985) § 2.06, comment 6. Connecticut has taken the same approach through General Statutes § 53a-8. See *State* v. *Baker,* supra.' *State* v. *Harris,* supra." *State* v. *Foster,* supra, 532–33.

Since § 53a-8 does not define a separate distinct crime, but only describes an alternative means by which a substantive crime may be committed, the respondent may be considered a serious juvenile offender for the purposes of § 46b-120 by having intentionally aided another in the commission of a "serious juvenile offense" as defined by that statute.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.