## STATE OF CONNECTICUT *v.* DAMIAN THOMAS
## (AC 20235)

Schaller, Zarella and Peters, Js.

Argued December 5, 2000—officially released March 20, 2001

*Frank P. Cannatelli*, for the appellant (defendant).

*Bruce R. Lockwood,* assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Damian Thomas, appeals from the judgment of conviction, rendered after a jury trial, of four counts of felony murder in violation of General Statutes § 53a-54c[1] and one count of carrying a pistol without a permit in violation of General Statutes § 29-35.[2] On appeal, the defendant claims that (1) the evidence was insufficient to support the felony murder conviction, (2) the court's failure to instruct the jury, sua sponte, on the defense of extreme emotional disturbance constituted plain error and (3) the court violated his constitutional right against double jeopardy by convicting him of four counts of felony murder when there were only two homicide victims. We affirm the judgment of the trial court in part and reverse it in part.

---

[1] General Statutes § 53a-54c provides: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (1) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (2) was not armed with a deadly weapon, or any dangerous instrument; and (3) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (4) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

[2] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ."

The jury reasonably could have found the following facts. On December 25, 1997, the defendant was at the Alley Cat Night Club in New Haven with Holbert Brown, Ricardo Beckford and Corey Merritt. At approximately 1 a.m., they left the nightclub and drove around New Haven. When they entered the Newhallville section of New Haven, the defendant asked the driver, Brown, to pull the car over. The defendant exited the car alone and proceeded around the corner to a residence at 622 Winchester Avenue.

Several people were standing outside the residence. Anthony Mitchell, Tavis Anderson and Ronnie Washington were on the porch of the residence. Joe Foskey and Jevon Langley were on the steps of the porch. The defendant approached the residence with a gun in his hand and stated, "Stick up" and "nobody move." Mitchell, Anderson and Washington ran into the residence. Mitchell and Washington hid in separate bedrooms in the residence while Anderson fled out the back door. From the bedroom, Mitchell observed the defendant follow Foskey and Langley into the living room of the house. The defendant stated to Langley and Foskey, "Lay down. Give me everything. Don't look up." Mitchell witnessed the defendant shoot Langley, who lay on the floor. Mitchell heard another shot, but could not see at whom the defendant shot. Shortly thereafter, Mitchell heard another shot outside. Mitchell later identified the defendant from a photographic array as the person who "killed two people." He also identified the defendant at trial.

Washington, who was hiding in the bedroom, could see Langley, but could not see Foskey. Twice he heard the defendant say "to run everything," which is street parlance for give me everything.[3] Langley refused to

---

[3] The following colloquy occurred at trial:

"[State's Attorney]: When you say this person said 'run everything' to [Langley], is that correct, 'run everything' means what?

"[Washington]: Give him everything he got.

comply with the defendant's order. Washington then saw the defendant shoot Langley. He did not see the defendant shoot Foskey, but he heard the shot. He heard another shot fired after the defendant left the house. Washington was unable to identify the defendant as the person who shot Langley and Foskey.

After the shootings, the defendant ran to the waiting car, jumped in it and directed Brown to drive away. Merritt, who was seated in the backseat, observed the defendant with a .41 caliber handgun. Merritt had seen the defendant with this handgun on previous occasions.

Foskey and Langley died from bullet wounds. The bullets were .41 caliber and had been fired from the same gun. On January 20, 1998, the police arrested the defendant. The defendant confessed to the shootings at the police station. He testified at trial, however, that he did not commit the crimes and that the police had coerced his confession.

The jury found the defendant guilty of four counts of felony murder and one count of carrying a pistol without a permit based on a March 8, 1999 information. The court then imposed the following sentence on May 28, 1999: Count two of felony murder based on the death of Foskey during a robbery, sixty years; count three of felony murder based on the death of Langley during a robbery, sixty years, concurrent with the sentence imposed on count two; count four of felony murder based on the death of Foskey during a burglary, sixty years, consecutive to the sentence imposed on counts two and three; count five of felony murder based on the death of Langley during a burglary, sixty years, consecutive with the sentence imposed on counts two and three and concurrent with count four; and count eight of carrying a pistol without a permit, five years,

"[State's Attorney]: Is that a robbery?
"[Washington]: Yes, sir."

concurrent with the sentence imposed on counts two, three, four and five.[4] The total effective sentence was 120 years. This appeal followed.

I

The defendant first claims that the evidence was insufficient to support his conviction for felony murder. Although the defendant concedes that there was sufficient evidence to establish that he intended to kill the victims, he contends that there was insufficient evidence for the jury to find that he intended to rob or burglarize the victims. In essence, the defendant contends that the jury assumed an underlying felony where there was none and he was, therefore, wrongfully convicted under our felony murder statute. The defendant did not preserve this insufficiency of the evidence claim at trial. He seeks review, however, under the plain error doctrine pursuant to Practice Book § 60-5.[5] We find no merit to the defendant's claim.

We begin by noting that the defendant's unpreserved sufficiency of the evidence claim is not reviewable under the plain error doctrine, but rather is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because it involves a fundamental constitutional right. "Although the defendant failed to raise this claim at trial, our Supreme Court has stated that unpreserved sufficiency of the evidence claims satisfy the requirements of *State* v. *Golding*, [supra, 213 Conn. 233] . . . and are therefore reviewable because such claims implicate a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof." (Internal quotation marks omitted.) *State* v. *Scott*, 55

---

[4] The jury found the defendant not guilty on count one of capitol felony, count six of murder and count seven of murder.

[5] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

Conn. App. 660, 664, 740 A.2d 441 (1999), cert. granted on other grounds, 252 Conn. 918, 744 A.2d 439 (2000); see also *State* v. *Roy*, 233 Conn. 211, 212, 658 A.2d 566 (1995).[6]

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 732, 759 A.2d 995 (2000).

We note that "[f]elony murder occurs when, in the course of and in furtherance of another crime, one of the participants in that crime causes the death of a person who is not a participant in the crime." (Internal quotation marks omitted.) Id., 733.

---

[6] "In *State* v. *Roy*, supra, 233 Conn. 212, our Supreme Court held that review of the defendant's unpreserved claim of constitutional error and failure to seek a review under the principles of *State* v. *Golding*, supra, 213 Conn. 233, should not have prevented the Appellate Court from reviewing the defendant's challenge to the sufficiency of the evidence for his conviction. The decision notes that '[i]n the circumstances of this case,' the merits of the defendant's challenge should have been reviewed. . . . It is not certain, therefore, whether the principle of *Roy* applies to all alleged constitutional deprivations or only those that relate to a claim that the evidence was insufficient to convince a trier that every element of an offense has been proven beyond a reasonable doubt. We interpret the words '[i]n the circumstances of this case' to refer to unpreserved sufficiency claims and not to the particular factual situation presented in *Roy*." (Citation omitted.) *State* v. *Rogers*, 38 Conn. App. 777, 788 n.10, 664 A.2d 291, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995), cert. denied, 516 U.S. 1084, 116 S. Ct. 799, 133 L. Ed. 2d 747 (1996).

First, in the present case the jury reasonably could have found the defendant guilty of attempt to commit robbery. "A person is guilty of criminal attempt if, acting with the kind of mental state required for the commission of the crime, he intentionally engages in conduct that would constitute the crime if the attendant circumstances were as he believes them to be or if he intentionally commits an act that constitutes a substantial step in a course of conduct planned to culminate in the commission of the crime." *State* v. *Wallace*, 56 Conn. App. 730, 740, 745 A.2d 216, cert. denied, 253 Conn. 901, 753 A.2d 939 (2000); see General Statutes § 53a-49. "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of . . . compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." General Statutes § 53a-133 (2). "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." General Statutes § 53a-119.

The jury reasonably could have found that the defendant approached the two victims with a .41 caliber handgun, stated, "Stick up" and "nobody move," and then forced them into the house. The jury also reasonably could have inferred that the defendant ordered them to "lay down," to "give [him] everything" and not to "look up" because he intended to rob them. We conclude that the jury reasonably could have found that the defendant's conduct constituted a substantial step toward the commission of the crime of robbery.

Second, the jury reasonably could have found that the defendant committed burglary. The defendant argues that there is insufficient evidence of a robbery.

He maintains that there is "[n]o evidence at all of an intent to rob or a robbery in progress. All actions of the defendant appear consistent with that of simply wanting to kill the victims." Under this reasoning, robbery could not serve as the underlying crime for the felony of burglary. The facts, however, do not support the defendant's argument. There is evidence indicating that the defendant entered the residence with the intent to commit a robbery therein and was, therefore, guilty of burglary. "A person is guilty of burglary . . . when he enters or remains unlawfully in a building with intent to commit a crime therein." General Statutes § 53a-103 (a). The jury reasonably could have concluded that the defendant entered the residence at 622 Winchester Avenue in New Haven with the intent to rob the victims he had forced inside. We conclude that the jury reasonably could have found the defendant guilty of burglary in accordance with the statute.

"[T]o sustain the court's finding of probable cause as to the felony murder charge, there must be sufficient evidence that the [defendant] was committing or attempting to commit one of certain enumerated crimes and in the course of and in furtherance of or in flight therefrom he caused the deaths of the victims." (Internal quotation marks omitted.) *In re Michael B.*, 36 Conn. App. 364, 372, 650 A.2d 1251 (1994). "[T]he state must prove, beyond a reasonable doubt, all the elements of the statutorily designated underlying felony, and in addition, that a death was caused in the course of and in furtherance of that felony." (Internal quotation marks omitted.) *State* v. *Lewis*, 245 Conn. 779, 786, 717 A.2d 1140 (1998). In the present case, the jury reasonably could have concluded that the defendant killed the two victims in the course of and in furtherance of an attempted robbery and burglary. Consequently, the defendant's claim of insufficient evidence with respect to his felony murder conviction is without merit.

## II

The defendant next claims that the court's failure to instruct the jury, sua sponte, on the defense of extreme emotional distress constituted plain error. We disagree.

The defendant requests that this court consider the validity of our Supreme Court's holding in *State* v. *Veal*, 201 Conn. 368, 517 A.2d 615 (1986). In *Veal*, our Supreme Court stated: "We have never held . . . that a trial court has a due process obligation to examine the evidence sua sponte to see whether it supports the existence of the mitigating circumstances contemplated by the defense of extreme emotional disturbance. On the contrary, we have previously concluded that a trial court has not deprived a defendant of a fundamental constitutional right and a fair trial by giving a jury instruction that, in the absence of a timely request or exception, omits any reference to an affirmative defense such as extreme emotional disturbance." Id., 373; see also *State* v. *Preyer*, 198 Conn. 190, 197–98 n.9, 502 A.2d 858 (1985); *State* v. *Jacobowitz*, 194 Conn. 408, 411–12, 480 A.2d 557 (1984).

Our Supreme Court's decision in *Veal* is controlling. "We are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them." *State* v. *Potts*, 55 Conn. App. 469, 474, 739 A.2d 1280, cert. denied, 252 Conn. 905, 743 A.2d 616 (1999). Accordingly, we find no merit to the defendant's claim that the court's failure to instruct the jury, sua sponte, on the defense of extreme emotional distress constituted plain error.

## III

The defendant's final claim is that the court violated his constitutional right against double jeopardy by *convicting* him on four counts of felony murder when there were only two homicide victims. The state disagrees

with the contention that the defendant was improperly *convicted*, but concedes that the court improperly *sentenced* the defendant on four counts of felony murder. We conclude that the sentencing on four counts of felony murder violated the defendant's rights.

The double jeopardy clause of the fifth amendment prohibits "not only multiple trials, but also multiple punishments for the same offense in a single trial." *State* v. *Devino*, 195 Conn. 70, 73, 485 A.2d 1302 (1985). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." (Internal quotation marks omitted.) *State* v. *Chicano*, 216 Conn. 699, 706, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991).

In regard to the felony murder statute, our Supreme Court has determined that "[t]he statute refers to the death of 'a person' in the singular. A fundamental purpose of the criminal law is to protect individual citizens from the criminal conduct of another. People are neither fungible nor amorphous. Where crimes against persons are involved, a separate interest of society has been invaded for each violation. Therefore when two or more persons are the victims of a single episode there are as many offenses as there are victims." *State* v. *Couture*, 194 Conn. 530, 565–66, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

In *State* v. *John*, 210 Conn. 652, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989), the defendant was convicted of felony murder and manslaughter in the first degree for a single homicide. Our Supreme Court stated that "[o]n the basis of our holding in *State* v. *Couture*, [supra, 194 Conn. 530] . . . and a review of the felony murder statute, how-

ever, we conclude that the legislature contemplated that the two statutory provisions should be treated as a single crime for double jeopardy purposes." *State* v. *John,* supra, 695. Accordingly, our Supreme Court held that "[t]he history of the murder and felony murder statutes, read in conjunction with our holding in *Couture,* indicates that the legislature contemplated that only one punishment would be imposed for a single homicide, even if that homicide involved the violation of two separate statutory provisions." Id., 696. Following the reasoning and the holdings of our Supreme Court in *John* and *Couture,* we determine that the felony murder conviction based on the crime of attempt to commit robbery and the felony murder conviction based on the crime of burglary for each victim are treated as a single crime for double jeopardy purposes.

Having determined that the court violated the defendant's double jeopardy rights by *sentencing* him on four counts of felony murder when there were only two victims, we now must ascertain a proper remedy for the violation.[7]

Our Supreme Court in *Chicano* addressed the issue of the appropriate form of the remand when a court has imposed multiple punishments for the same crime. In *Chicano,* the state requested that the court vacate the sentence only and not the conviction. The court stated that "[t]he procedural format of this request is consistent with the procedure followed by the Second Circuit Court of Appeals . . . but it is not consistent with the procedure followed by this court in prior cases involving successful double jeopardy claims." (Citations omitted.) *State* v. *Chicano,* supra, 216 Conn. 721–22 n.18. Moreover, the court noted that "[a] major-

---

[7] At oral argument before this court, the defendant joined with the state in conceding that we should remand the case to the trial court for the purpose of merging the counts.

ity of the circuits follow the procedure of vacating both the conviction and the sentence on the lesser offense . . . [however] [t]he procedure of vacating only the sentence has found support in at least three circuits other than the Second Circuit." (Citations omitted). Id., 724 n.19.

Our Supreme Court in *Chicano* determined that the "Second Circuit's approach to this procedural issue adequately addresses the dual concerns relating to a subsequent reversal of the remaining conviction and subjecting a defendant to the collateral consequences of multiple convictions." Id., 725. The court held, therefore, that the proper procedure when a court has imposed multiple punishments for the same offense is to vacate only the additional sentence and not the conviction. Id.

The judgment is reversed in part and the case is remanded with direction to vacate the sentences on counts four and five, to combine the conviction on count four with the conviction on count two and to combine the conviction on count five with the conviction on count three, and for resentencing on counts two and three. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.