STATE OF CONNECTICUT *v.* DAVON HICKS
(AC 26878)

Harper, Lavine and Berdon, Js.

Argued October 25, 2006—officially released May 1, 2007

*Conrad Ost Seifert,* for the appellant (defendant).

*Mitchell S. Brody,* senior assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Terence D. Mariani,* senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Davon Hicks, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and assault in the first degree in violation of General Statutes § 53a-59 (a) (4). On appeal, the defendant claims that (1) his right to due process of law was violated by an unnecessarily suggestive identification procedure, (2) his warrantless arrest was unconstitutional and (3) there was insufficient evidence to convict him of assault in the first degree in violation of § 53a-59 (a) (4). None of these claims was preserved at trial, and the defendant seeks to prevail under *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In Waterbury, during the early hours of August 5, 2000, the victim, Stephen Alseph, had an altercation in the parking lot of his apartment building with Chantell Paris and Tierra Mourning, friends of his wife, Keisha Alseph. When Paris and Mourning departed, the Alsephs retired to their apartment. Less than one hour later, Cornelius Flowers, Arthur Trent and the defendant broke into the apartment and attacked the victim in his bedroom. The men repeatedly struck the victim with their fists, and Trent hit the victim on the head with a ceramic lamp, causing bruises and lacerations. After the victim chased his assailants from the premises,

the police were called. The victim was taken to a hospital where surgical staples were used to close the lacerations in his scalp.

Keisha Alseph told Officer David Rovinetti of the Waterbury police department that she recognized Flowers as one of the assailants.[1] She also told Rovinetti that she recognized the defendant as a man whom she had seen before and knew to be involved romantically with Chivone Trent, but she did not know the defendant's name. Keisha Alseph attributed the assault to the victim's earlier argument with her girlfriends.[2] The victim also recognized his assailants but did not know their names. Rovinetti informed police headquarters that Flowers was one of the suspects.

At the time the police were investigating the assault, Victoria Vasquez reported that Flowers, her former boyfriend, had made repeated threatening telephone calls to her in violation of a protective order. The police traced the origin of the telephone calls to the home of Steven Gadue. Gadue permitted the defendant to come and go from his home, but the defendant did not have a key to the house. Police went to the residence, and Gadue let them enter. The police found the defendant and Flowers attempting to hide under a bed. The police handcuffed the defendant and Flowers and took them outside. The victim and Keisha Alseph were transported to the scene, where they made individual identifications of the defendant and Flowers.

---

[1] Flowers was tried separately and convicted of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2). His conviction was upheld on appeal to this court but was overturned by our Supreme Court on the basis of an improper jury instruction. See *State* v. *Flowers*, 278 Conn. 533, 898 A.2d 789 (2006).

[2] Paris was arrested in connection with the incident. She pleaded guilty under the *Alford* doctrine; see *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); to conspiracy to commit burglary in the first degree and conspiracy to commit assault in the first degree.

The defendant was charged in a three count substitute information. A jury found him guilty beyond a reasonable doubt of all three charges. On May 17, 2001, the court sentenced the defendant to an effective term of twenty years, execution suspended after eight years, and five years of probation. The defendant did not timely pursue his appellate rights, and his appeal was dismissed by this court on January 4, 2002. Those rights were restored by the habeas court, *Hon. Sidney Axelrod*, judge trial referee; see *Hicks* v. *Warden*, Superior Court, judicial district of Danbury, Docket No. CV-02-0345064-S (January 20, 2006); and the defendant filed the present appeal.

I

We will address the defendant's first two claims together. The defendant claims that the police arrested him without probable cause and that the "show-up" identification procedure was unduly suggestive in contravention of his constitutional rights. The claims are not reviewable.

At trial, the defendant failed to file a motion to suppress evidence related to his arrest or evidence of the subsequent "show-up" identification. He seeks *Golding* review of his appellate claims. Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

Although the defendant's claims are of a constitutional magnitude, we cannot review them because the record is inadequate.[3] The trial court made no factual findings or came to any legal conclusions with respect to those claims. An appellate record containing a set of facts concerning the question of whether probable cause existed to arrest the defendant is necessary for appellate review. See *State* v. *Canales*, 281 Conn. 572, 579–80, 916 A.2d 767 (2007) (declining *Golding* review where neither probable cause nor legality of arrest were subject of "meaningful discussion" at suppression hearing). Likewise, factual findings and legal conclusions concerning the suggestiveness and reliability of the identification procedure specific to this case are essential to the adjudication of the defendant's claim. See *State* v. *Morgan*, 274 Conn. 790, 793 n.5, 877 A.2d 739 (2005).

## II

The defendant's third claim is that there was insufficient evidence to convict him of assault in the first degree in violation of § 53a-59 (a) (4). We will review this unpreserved claim as we would review any preserved claim. "[A]ny defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the

---

[3] Although this court is unable to review the defendant's claims with respect to his warrantless arrest and the "show-up" identification procedure, the defendant has a remedy by which to obtain judicial review of those claims. In resolving the defendant's amended petition for a writ of habeas corpus alleging the ineffective assistance of counsel, Judge Axelrod noted that the claims concerning the filing of various motions typically must be raised on direct appeal, not in a habeas corpus proceeding. Judge Axelrod anticipated that this court might not address the claims and addressed the issue in his memorandum of decision. Judge Axelrod stated that in the event that this court declined to review the claims concerning the motions to suppress, the defendant would have the right either to reclaim the issues in a new petition for a writ of habeas corpus or to ask that the petition he was adjudicating be reinstated for the limited purpose of having the issues regarding the motions resolved. See *Hicks* v. *Warden*, supra, Superior Court, Docket No. CV-02-0345064-S.

four prongs of *Golding*. . . . [N]o practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Singleton*, 97 Conn. App. 679, 684 n.7, 905 A.2d 725, cert. granted on other grounds, 280 Conn. 949, 912 A.2d 484 (2006). The defendant cannot prevail, however, because he has misconstrued the application of § 53a-59 (a) (4) to an accessory through General Statutes § 53a-8.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Thomas*, 62 Conn. App. 356, 361, 772 A.2d 611, cert. denied, 256 Conn. 912, 772 A.2d 1125 (2001).

As previously stated, the third count of the substitute information charged the defendant with assault in the first degree in violation of § 53a-59 (a) (4). "A person is guilty of assault in the first degree when . . . (4) with intent to cause serious physical injury to another person and while aided by two or more other persons actually present, he causes such injury to such person or to a third person . . . ." General Statutes § 53a-59 (a). The defendant filed a motion for a bill of particulars in which he asked the state to provide the specific nature of the offenses with which he was charged and the specific acts that he performed that constitute all of the necessary elements of the crime charged.

The state filed, in part, the following response to the motion for a bill of particulars: "The defendant along with at least two others unlawfully entered an apartment at 163-4 Mark Lane, Waterbury, Connecticut. It is the State's contention that the group entered to either assault and or threaten [the victim] in retaliation for a prior incident involving [the victim] . . . Mourning and . . . Paris. The group attacked [the victim] inside the apartment repeatedly beating him causing bodily injury. The defendant participated in the beating striking [the victim] causing bodily injury. Also during the assault one of the group picked up a lamp and smashed it over the head of [the victim] causing serious physical injury. The State is proceeding against the defendant as both a principal and an aider and [abettor]. As to aiding and abetting, the defendant, acting with the mental state necessary for commission of an offense (. . . Assault in the First Degree [§] 53a-59 [a] [4]), intentionally aided another person to engage in conduct which constituted the offenses herein listed."

The substance of the defendant's claim is that because there was unequivocal evidence that Trent struck the victim on the head with the ceramic lamp, the only way the defendant could be convicted was as an accessory and that accessory liability emanates from § 53a-8.[4] We disagree with the defendant's claim.

"Connecticut long ago adopted the rule that there is no practical significance in being labeled an accessory or a principal for the purpose of determining criminal responsibility. . . . The modern approach is to abandon completely the old common law terminology and simply provide that a person is legally accountable for

---

[4] General Statutes § 53a-8 (a) provides in relevant part: "A person, acting with the mental state required for commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

the conduct of another when he is an accomplice of the other person in the commission of the crime. . . .

"The established rule . . . is that accomplice liability extends to acts of the principal . . . which were a natural and probable consequence of the criminal scheme the accomplice encouraged or aided. . . . [T]he aider and abettor is responsible not only for the success of the common design, but also for the probable and natural consequences that flow from its execution, even if those consequences were not originally intended." (Citation omitted; internal quotation marks omitted.) *State* v. *Henry*, 253 Conn. 354, 361, 752 A.2d 40 (2000).

The modern approach to accessory liability, which Connecticut has adopted through § 53a-8, simply is to "provide that a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime. . . . [A] person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of the offense, he . . . aids or agrees or attempts to aid the other person in planning or committing it . . . ." (Internal quotation marks omitted.) *In re Luis R.*, 204 Conn. 630, 638, 528 A.2d 1146 (1987).

Here, the jury heard evidence that the defendant entered the victim's apartment with two other men and that the defendant hit the victim with his fists. The defendant continued to hit the victim while Trent broke a lamp over the victim's head, inflicting lacerations and bruising, injuries that were treated at a hospital. Those facts and the reasonable inferences to be drawn from them were sufficient for the jury to have found beyond a reasonable doubt that the defendant shared with the principal the criminal intent and unlawful purpose to inflict serious physical injury on the victim with two

others present and that the defendant knowingly and wilfully assisted the facilitation and consummation of the act through his active participation in beating the victim.

The defendant has argued on appeal that he is not guilty as an accessory because when accessory liability is applied to § 53a-59 (a) (4), there are not enough aiders present to satisfy the elements of the statute. His argument is that one cannot give the aid necessary to satisfy the element of the assault statute requiring that two or more people aid the offense and simultaneously give the aid necessary to be implicated as an accessory to the crime under § 53a-8. Convicting the defendant as an accessory to assault is not, as the defendant argues in his brief, to construe him "as the '*he*' who actually inflicted hands-on injury while simultaneously construing Trent, the actual assailant, to be a non-hands-on aider." (Emphasis in original.) Rather, the defendant is *punished* as if he were the principal offender because his intent and willing assistance make him as culpable as the principal under § 53a-8.

In a similar analysis, our Supreme Court considered the application of robbery in the second degree; see General Statutes § 53a-135 (a) (1);[5] to an accessory. See *State* v. *Crump*, 201 Conn. 489, 518 A.2d 378 (1986). An element of robbery in the second degree is the presence of one or more persons who aid in the offense. In that case, "the defendant or his companion actually pushed [the robbery victim] away from the open cash register and took the $300 from it. It is not required that the proof show that the defendant was the actual perpetrator because the proof does show that the perpetrator [was] aided by another person actually present." (Internal

---

[5] General Statutes § 53a-135 (a) provides in relevant part: "A person is guilty of robbery in the second degree when he commits robbery as defined in section 53a-133 and (1) he is aided by another person actually present . . . ."

quotation marks omitted.) Id., 494. Our Supreme Court upheld the conviction for robbery in the second degree because the defendant was a participant and had the intent to commit the crime. Id. Therefore, one who is an aider for the purpose of establishing an element of the crime also may be criminally liable as an accessory for giving such aid.

The plain language of § 53a-59 (a) (4) does not directly penalize the two or more persons actually present who aid the principal. The statute indicates that the culpable individual is the person who actually causes the serious injury, not those who are present and aid him, though their presence is an element of the crime. Statutes are generally constructed to implicate the principal offender in this manner. The plain language of the statute does not limit our ability to punish one whose aid also constitutes an element of the crime when, as here, his actions constitute accessory liability under § 53a-8.[6]

The judgment is affirmed.

In this opinion HARPER, J., concurred.

BERDON, J., concurring. I agree with the majority opinion that because the trial court made no factual findings, we are unable to review whether the police arrested the defendant, Davon Hicks, without probable cause and whether the "show-up" identification was suggestive in contravention of the defendant's constitutional rights. I also agree with the majority opinion that

---

[6] The defendant also claims that the court improperly instructed the jury as to accessory liability for the charge of assault in the first degree pursuant to General Statutes § 53a-59 (a) (4). The defendant's argument with respect to the jury instruction is the same one he made with respect to his sufficiency of the evidence claim. We conclude, for the same reasons stated in part III, that the court's instruction was correct in the law.

*on the basis of the present record,* there was sufficient evidence to convict the defendant.

I write this concurring opinion because I would not stop there. Rather, I would remand the case to the trial court, pursuant to our rules of appellate procedure, to find the facts necessary for this court to determine whether the police had probable cause to arrest the defendant and whether the "show-up" procedure was unduly suggestive.

Section 60-2 of the rules of practice provides in relevant part that the court "on its own motion or upon motion of any party . . . [may] (9) remand any pending matter to the trial court for the resolution of factual issues where necessary . . . ." I am aware that our Supreme Court has held that these "supervisory powers are not a last bastion of hope for every untenable appeal. They are an *extraordinary* remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Emphasis in original; internal quotation marks omitted.) *State* v. *Hines,* 243 Conn. 796, 815, 709 A.2d 522 (1998).

This is one of those cases that requires that we invoke our supervisory power under subdivision (9) of § 60-2 of the rules of practice. This appeal involves the defendant's conviction, which dates back to May 17, 2001, for an incident that occurred on August 4, 2000. He is a black man who was convicted by an all white jury and was represented by a trial attorney who was eventually suspended from the practice of law. After the defendant's conviction, and before being sentenced to twenty years imprisonment, suspended after eight years, an attorney, other than the defendant's trial attorney, moved for a new trial, alleging that the victim's wife,

Keisha Alseph, had given him an oral statement, recorded on tape, that she "now knows it was not the defendant who was one of her three assailants, but another party who clearly resembles the defendant." The motion was summarily denied by the trial court. The defendant took this appeal to this court, which was dismissed on January 4, 2002, because counsel did not pursue it in a timely manner. The habeas court restored the defendant's appellate rights on August 9, 2005, resulting in the present appeal.

I recognize, as referenced in footnote 3 of the majority opinion, that the defendant can seek review of claims as to his warrantless arrest and the "show-up" identification procedure through a new or reinstated petition for habeas corpus, on the basis of ineffective assistance of counsel. Under these circumstances, such review is insufficient. This defendant has now been incarcerated for more than six years and, with credit for good time, likely will have served his entire sentence before he can get an effective review of his conviction through the habeas route. The exercise of our supervisory powers to remand the case for further factual findings would accomplish the same result in a more expeditious manner.